**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **ALPHA ENERGY, a division of ALPHA TECHNOLOGIES SERVICES, INC.,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL NO. 17-cv-15** |
| **v.** | ) ) ) | **COMPLAINT FOR BREACH OF CONTRACT, UNJUST ENRICHMENT, AND CLAIM AGAINST PAYMENT BOND** |
| **GEC, LLC, and CONTINENTAL CASUALTY COMPANY,** | ) ) ) | |
| **Defendants.** | ) ) | |

Plaintiff Alpha Energy, a division of Alpha Technologies Services, Inc., by and through undersigned counsel, complains and states as follows:

## JURISDICTION

1.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties have diversity of citizenship and the amount in controversy exceeds $75,000.

## VENUE

2.  Venue is proper within the District Court of the Virgin Islands pursuant to 28 U.S.C. § 1391(b)(2) because the construction project which is the subject of this action is located in the U.S. Virgin Islands and, therefore, a substantial part of the events or omissions giving rise to the action occurred in the U.S. Virgin Islands.

## PARTIES

3.  Plaintiff Alpha Energy, a division of Alpha Technologies Services, Inc. ("Alpha") is a Nevada corporation with its principal place of business in Bellingham, Washington.

4.    Defendant GEC, LLC ("GEC") is, upon information and belief, a Virgin Islands limited liability corporation with its principal place of business in Kingshill, St. Croix, U.S. Virgin Islands.

5.    Defendant Continental Casualty Company, Inc. ("Continental") is, upon information and belief, an Illinois corporation with its principal place of business in Chicago, Illinois.

<b>STATEMENT OF FACTS</b>

<u>**Project and Subcontract**</u>

6.    On or around July 7, 2015, Alpha and GEC entered into a subcontract (the "Subcontract") under which Alpha would furnish and install a photovoltaic (solar) microgrid system to provide power for a new affordable housing apartment complex on St. Croix in the U.S. Virgin Islands (the "Project").   The original contract value of the Subcontract was $1,652,000. A copy of the Subcontract is attached hereto as <u>Exhibit A</u>.

7.    On or around August 5, 2015, Alpha and GEC agreed to a change order under the Subcontract. Following this change order, the contract value of the Subcontract was $1,685,000.

8.    Alpha's work under the Subcontract included furnishing and installing rooftop racking and solar panels on 17 of the 20 overall building being built on the Project, as well as electrical equipment necessary for the operation of the system, such as an inverter, back-up generators, and a battery storage system.

9.    The Project was beset by delays not the fault of Alpha. Once the predecessor work to Alpha's work became complete, Alpha timely performed its work under the Subcontract.

<u>**Alpha's Performance and GEC's Failures to Pay**</u>

10.    As of the date of this Complaint, with Alpha's work (as well as the overall Project work) essentially complete, Alpha has been paid only about 20% of the contract value of the

Subcontract and has thus been forced to self-finance its work under the Subcontract at great financial strain to Alpha.

11.    The Subcontract calls for the following payment milestones:

- 10% of the contract value to be paid up front;

- 10% of the contract value to be paid upon submittal approval (by the Project architect of record and electrical engineer of record);

- 30% of the contract value to be paid upon delivery of all materials;

- 40% of the contract value to be paid as progress payments based on percentage completion of installation work; and

- 10% of the contract value to be held as retainage and released upon completion of Alpha's work.

12.    GEC has disregarded the payment milestones set forth in the Subcontract and routinely refused, without cause, to pay Alpha the amounts due and owing.

13.    Per the Subcontract payment milestones, 10% of the contract value was to be paid up front. On or around July 17, 2015, Alpha submitted its pay request #1 ("PE1") in the amount of $148,680. GEC paid PE1 in full on August 5, 2015. This is the only pay request timely paid by GEC.

14.    Per the Subcontract payment milestones, 10% of the contract value was to be paid upon submittal. On October 6, 2015, the Project architect of record, electrical engineer of record, and GEC approved Alpha's submittal package. On or around November 6, 2015, Alpha submitted its pay request #2 ("PE2") in the amount of $178,416. Despite the fact that Alpha had achieved the requisite milestone, GEC refused to pay PE2 for nearly a full year. GEC released payment of PE2 (not including accrued interest thereon) on October 13, 2016.

15.     Per the Subcontract payment milestones, 30% of the contract value was to be paid upon delivery of all materials. By approximately September 14, 2016, all of Alpha's materials and equipment had been delivered. On October 21, 2016, Alpha submitted its pay request #3 ("PE3") in the amount of $594,720. GEC has failed to pay PE3 and currently refuses to do so.

16.     Per the Subcontract payment milestones, 40% of the contract value was to be paid as progress payments based on percentage completion of the installation work. By November 5, 2016, at least 70% of Alpha's installation work had been completed. Accordingly, on November 7, 2016, Alpha submitted its pay request #4 ("PE4") in the amount of $267,624. GEC has failed to pay PE4 and currently refuses to do so.

17.     On December 23, 2016, Alpha submitted its pay request #5 ("PE5"), reflecting 100% installation completion, in the amount of $363,440. GEC has failed to pay PE5 and currently refuses to do so.

18.     All told, pay requests totaling $1,357,944 (including retainage in addition to the unpaid pay requests) out of a total contract value of $1,685,040 are outstanding despite the fact that Alpha has essentially completed its work.

**Unapproved Change Orders**

19.     At the time Alpha submitted its bid to GEC on February 17, 2015, and subsequently entered into its contract with GEC on July 7, 2015, the 2011 version of the National Electrical Code ("NEC") was in effect as the governing electrical code on the U.S. Virgin Islands.

20.     On September 3, 2015, GEC indicated that the 2014 NEC would replace the 2011 NEC as the governing electrical code as of October 1, 2015, and that Alpha would be required to comply with the 2014 NEC.

21.     There were several additional requirements placed on the design of the microgrid system as a result of the change in code, most notably with regard to the remote shutdown

4

system.   On July 11, 2016, Alpha submitted change order ("CO") No. 2 in the amount of $76,605.53, which represented Alpha's additional costs resulting from the change in code.  GEC rejected CO No. 2.

22.    Alpha is entitled to payment for its efforts in performing the work required in CO No. 2.

23.    On December 31, 2016, a temporary certificate of occupancy for the microgrid system was issued along with a punchlist of remaining items that needed to be completed in order to obtain a final certificate of occupancy. Based on the punchlist, it was estimated that a final certificate of occupancy could be obtained by January 31, 2017.  Alpha completed the punchlist and requested a final inspection on January 18, 2017.

24.    At the January 18, 2017 inspection of the microgrid system, for the first time, concerns were raised regarding the wind load capacity of the racking system.

25.    GEC had provided the preliminary design on which Alpha's racking system is based. In addition, the Project architect of record, structural engineer of record, and GEC all reviewed Alpha's final racking system design and the microgrid system permit was issued based on the drawings submitted, and no concerns ever arose regarding the wind load capacity of the racking system.

26.    Following the January 18, 2017 inspection, Alpha promptly engaged a U.S. Virgin Islands-licensed structural engineer, and on February 27, 2017, received approval of the design of Alpha's proposed additional work to address structural concerns. This additional work consists of installing additional structural supports to the solar racking where the spans exceed 10 feet. On February 28, 2017, Alpha submitted CO No. 3 in the amount of $58,925.00.  GEC has denied any merit for CO No. 3.

27.     Alpha is entitled to payment for its efforts in performing the work required in CO No. 3.

**Claim Against Payment Bond**

28.     At or before commencement of the Project, GEC procured from Continental a payment bond, number 929497850, covering its payment obligations in connection with the Project (the "Payment Bond"). A copy of the Payment Bond is attached hereto as Exhibit B.

29.     On or around January 3, 2017, Alpha provided Continental with written notice of a claim against the Payment Bond pursuant to 28 V.I.C. § 259(f)(1).

30.     On or around January 23, 2017, Continental provided written acknowledgment of Alpha's notice of claim against the Payment Bond and requested that Alpha submit certain additional documentation in support of its claim.

31.     On or around February 3, 2017, Alpha provided Continental with the requested additional documentation.

32.     On or around February 28, 2017, Alpha provided Continental with an updated notice of claim against the Payment Bond.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

33.     Alpha repeats and realleges paragraphs 1 through 32 above as if fully set forth herein.

34.     Alpha has substantially performed all of its obligations under the Subcontract.

35.     GEC has breached the Subcontract in that it has failed and refused to pay Alpha for amounts rightfully due and owing pursuant to the payment terms of the Subcontract and on the basis of Alpha's provision of labor, services and materials in the prosecution of Alpha's scope of work and in furtherance of the overall Project.

36.     GEC has breached the Subcontract in that it has failed and refused to approve change orders to which Alpha is entitled, or to otherwise compensate Alpha for its additional incurred in carrying out extra and/or changed work.

37.     Alpha has suffered damages in the approximate amount of $1,565,767 as a direct and proximate result of GEC's breach of the Subcontract.

## SECOND CAUSE OF ACTION: UNJUST ENRICHMENT

38.     Alpha repeats and realleges paragraphs 1 through 37 above as if fully set forth herein.

39.     At the request of GEC, Alpha provided valuable labor, services and materials that were necessary for GEC to perform and complete its contractual obligations with the Project owner with respect to the overall Project.

40.     GEC benefited from Alpha's labor, services and materials, including but not limited to the fact that GEC could not have fully performed and completed its contractual obligations to the Project owner in the absence of the labor, services and materials provided by Alpha.

41.     GEC has failed and refused to pay Alpha for the labor, services and materials referenced herein.

42.     GEC has been unjustly enriched by accepting the benefits associated with, but refusing to pay Alpha for, Alpha's provision of labor, services and materials as referenced herein.

## THIRD CAUSE OF ACTION: CLAIM AGAINST PAYMENT BOND

43.     Alpha repeats and realleges paragraphs 1 through 42 above as if fully set forth herein.

44.     Alpha has complied with the statutory deadlines set forth in 28 V.I.C. § 259(f) with respect to claims against payment bonds.

45.     Pursuant to 28 V.I.C. § 259(g), Alpha has a direct right of action against Continental with respect to the Payment Bond.

46.    Continental is obligated, pursuant to the Payment Bond, to pay Alpha for the labor, services and materials furnished by Alpha in furtherance of the Project and for which GEC failed to make payment.

## PRAYER FOR RELIEF

WHEREFORE, Alpha hereby prays for the following relief:

A.    Judgment against GEC in the amount of $1,565,767 or such other amount as proven at trial;

B.    Judgment against Continental, as surety for the Payment Bond, in the amount of $1,565,767 or such other amount as proven at trial;

C.    Prejudgment interest at the statutory rate of 9% per annum pursuant to 11 V.I.C. § 951(a)(4);

D.    Costs of suit incurred in this action;

E.    Reasonably attorney's fees to the extent allowed under law; and

F.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**Beckstedt & Associates**
Attorneys for Plaintiff
2162 Church Street
Christiansted, VI 00820-4604

Dated:   March 20, 2017          By:     /s/ Carl A. Beckstedt III, Esq.
Carl A. Beckstedt III, Esq.
Virgin Islands Bar No. 684
carl@Beckstedtlaw.com
Michael A. Rogers, Esq.
V.I. Bar No. 1295
michael@beckstedtlaw.com

8

Of counsel:

Frank L. Bigelis
K&L Gates LLP
200 S. Biscayne Boulevard
Suite 3900
Miami, Florida 33131
Telephone:  305-539-3300
Facsimile:   305-358-7095
Email: frank.bigelis@klgates.com

        And

Bradley C. Lewis
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone: 206.370.8073
Facismile:  206.370.6412
Email: brad.lewis@klgates.com